**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 18, 2003**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                          No. 120453

MARK DREW PERKINS,

    Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                          No. 120461

MARK DREW PERKINS,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

    We granted leave to appeal in this case to determine whether the prosecutor presented enough evidence to secure a

bindover of defendant in the district court. The charges against defendant were criminal sexual conduct in the first degree (CSC-I),[1] the common-law offense of misconduct in office,[2] and two counts of possession of a firearm during the commission of a felony (felony-firearm).[3] The magistrate dismissed the charge of CSC-I, but bound over defendant on the charges of misconduct in office and felony-firearm. The circuit court affirmed with regard to CSC-I, but quashed the information with regard to the remaining charges. The Court of Appeals reversed, finding probable cause that the crime of CSC-I had been committed.[4] Dismissal of the felony-firearm charges was not raised on appeal beyond the circuit court level.

We hold that there was insufficient evidence to support a finding of the commission of CSC-I or misconduct in office. Accordingly, we reverse in part and affirm in part the decision of the Court of Appeals.

I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was a Bay County deputy sheriff who was

_____

[1]MCL 750.520b(1)(f).

[2]MCL 750.505.

[3]MCL 750.227b.

[4]Unpublished opinion per curiam, issued June 8, 2001 (Docket No. 229111).

2

prosecuted for acts arising from his sexual relationship with the complainant, a sixteen-year-old girl. The complainant was a close friend of defendant's family.

At the time of the charged incident, the complainant had known defendant and his family for approximately four years. Defendant's wife had been the complainant's basketball coach and defendant often had assisted his wife when the team practiced. From the date that the complainant met defendant until the incident involved here, the complainant regularly babysat for defendant's children, attended church with the family, and, for a time, resided with them. During that period, the complainant and defendant began having sexual relations.

On the date of the charged incident, the complainant was living with her mother and had just returned from a month-long excursion in Mexico. While the complainant was in Mexico, defendant telephoned her twice. During one call, defendant told the complainant that he had left a present for her under her mother's porch.

The complainant returned from Mexico and discovered that defendant had placed a ring under the porch. She then called defendant and left a voice mail message for him. They agreed to meet on the following Sunday in an industrial park while the complainant was on her way to church.

On Sunday, the complainant drove to the industrial park, found defendant, who was on duty in a marked police cruiser, and got into the car with him. The complainant and defendant hugged and talked about her trip to Mexico. Finally, the complainant fellated defendant.

The prosecutor charged defendant with four felony offenses: CSC-I, misconduct in office, and two counts of felony-firearm deriving from the other charged infractions. At the preliminary hearing on these charges, the magistrate concluded that there was insufficient evidence to bind defendant over on the CSC-I charge. However, the prosecutor had presented sufficient evidence to proceed on the charge of misconduct in office. Accordingly, the magistrate dismissed the CSC-I charge and the related felony-firearm charge and bound defendant over on the misconduct in office and the related felony-firearm charge. The circuit court then quashed the information. It also denied the prosecutor's motion to amend the information to reinstate the CSC-I charge.

The prosecutor appealed to the Court of Appeals, which held that the magistrate committed an abuse of discretion in refusing to bind defendant over on the CSC-I charge. It also affirmed the circuit court order quashing the charge of misconduct in office.

On appeal to this Court, defendant challenges the Court

4

of Appeals decision reinstating the charge of CSC-I. The prosecutor appeals, challenging that portion of the Court of Appeals ruling that affirmed the circuit court decision to quash the charge of misconduct in office.

## II. STANDARD OF REVIEW

We review a district court decision to bind over a defendant under an abuse of discretion standard. *People v Justice* (*After Remand*), 454 Mich 334, 344; 562 NW2d 652 (1997). We review any question of the proper interpretation of the underlying criminal law de novo. *People v Mass*, 464 Mich 615, 622; 628 NW2d 540 (2001).

## III. DISCUSSION

The purpose of a preliminary examination is to determine whether there is probable cause to believe that a crime was committed and whether there is probable cause to believe that the defendant committed it. MCR 6.110. The prosecutor need not establish beyond a reasonable doubt that a crime was committed. He need present only enough evidence on each element of the charged offense to lead "'a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of [the defendant's] guilt.'" *Justice, supra* at 344, quoting *Coleman v Burnett*, 155 US App DC 302, 317; 477 F2d 1187 (1973). Thus, charges should not be dismissed merely because the prosecutor has failed to convince the reviewing

5

tribunal that it would convict. That question should be reserved for the trier of fact. *People v Goecke*, 457 Mich 442, 469-470; 579 NW2d 868 (1998).

If the prosecutor fails to present evidence on each of the elements of a charged offense, it would be an abuse of discretion to bind over the defendant for trial. *Goecke, supra* at 469, citing *People v Doss*, 406 Mich 90, 100-101; 276 NW2d 9 (1979).

### A. Criminal Sexual Conduct

The prosecutor asserts that defendant's encounter with the complainant in his patrol car constituted CSC-I. The CSC-I statute, MCL 750.520b, provides in relevant parts:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> (f) The actor causes personal injury to the victim[5] and force or coercion is used to accomplish sexual penetration. Force or coercion includes but is not limited to any of the following circumstances:
>
> (i) When the actor overcomes the victim through the actual application of physical force or physical violence.
>
> (ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor

---

[5]The question of personal injury to the complainant was not raised in this appeal.

has the present ability to execute these threats.

(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnaping, or extortion.

(iv) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable.

(v) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

At the preliminary examination, the prosecutor's theory was that defendant was guilty of CSC-I through coercion. As an authority figure, defendant had engaged the complainant in continuing sexual conduct beginning when she was much younger. The prosecutor reasoned that defendant thus established a pattern of abuse that eroded the complainant's ability to resist his sexual advances during the incident in question. The prosecutor presented evidence that a child can be psychologically subjugated in this manner. There was no testimony that the complainant had been so subjugated.

In any event, the record shows that no evidence was presented at the preliminary hearing to support the prosecutor's assertion that the complainant was coerced, in any sense of that term, to fellate defendant on the occasion in question.

7

The facts were that the complainant had been out of the country for a month before the charged conduct occurred. The complainant initiated the meeting. Moreover, the sexual relationship between defendant and the complainant continued beyond the date of the charged conduct and lasted until the complainant entered into a relationship with her husband.

The unrebutted preliminary examination facts indicate that, on the date of the incident in question, the relationship was consensual and the complainant was involved in it of her own volition. If it were true that the complainant's actions were the result of defendant's subjugation of her will, then or at an earlier date, the prosecutor failed to present evidence of it. Because of the lack of evidence, it is unnecessary for this Court to reach the question whether psychological subjugation is a viable theory on which to rest a charge of CSC-I.

Thus, we cannot conclude that the district court committed an abuse of discretion by dismissing the charge of CSC-I. Accordingly, we reverse the Court of Appeals decision with regard to that charge.

### B. Misconduct In Office

Defendant was also charged with committing the offense of

common-law misconduct in office.[6] The Court of Appeals held that the circuit court properly quashed the information because the prosecutor failed to show a nexus between the charged conduct and defendant's status as a deputy sheriff. We agree with the Court of Appeals.

1.  The elements of common-law misconduct in office

When the Legislature codifies a common-law crime without articulating its elements, we must look to the common law for the definition of the crime. *People v Couch*, 436 Mich 414, 419-420; 461 NW2d 683 (1990). We are bound by the common-law definition until the Legislature modifies it. *People v Schmitt*, 275 Mich 575, 577; 267 NW 741 (1936); *People v Riddle*, 467 Mich 116, 126; 649 NW2d 30 (2002).

At common law, misconduct in office was defined as "corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office." *People v Coutu*, 459 Mich 348, 354; 589 NW2d 458 (1999)(*Coutu I*), quoting Perkins & Boyce, Criminal Law (3d ed), p 543. An officer could be convicted of misconduct in office (1) for

---

[6]MCL 750.505 provides:

Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court.

9

committing any act which is itself wrongful, malfeasance, (2) for committing a lawful act in a wrongful manner, misfeasance, or (3) for failing to perform any act that the duties of the office require of the officer, nonfeasance.  Perkins, p 540.

However, committing nonfeasance or acts of malfeasance or misfeasance are not enough to constitute misconduct in office. In the case of malfeasance and misfeasance, the offender also must act with a corrupt intent, i.e., with a "sense of depravity, perversion or taint."  See Perkins, p 542.  See also *People v Coutu (On Remand)*, 235 Mich App 695, 706; 599 NW2d 556 (1999)(*Coutu II*). In the case of nonfeasance, an offender must willfully neglect to perform the duties of his office.  Perkins, p 547.

Moreover, the officer's wrongdoing must result from or directly affect the performance of his official duties.

> The mere coincidence that a crime has been committed by one who happens to be a public officer is not sufficient to establish official misconduct. For this offense it is necessary not only that the offender be an officer, or one who presumes to act as an officer, but the misconduct, if not actually in the exercise of the duties of his office, must be done under color of his office.  On the other hand the act of one who is an officer, which act is done because he is an officer or because of the opportunity afforded by that fact, is *under color of his office* despite his gesture of removing his badge plus his statement that he is not acting in the name of the law. [Perkins, p 541].

With this understanding, we now consider whether there was

10

enough evidence to bind over defendant.

## 2. There is insufficient evidence to bind over defendant for misconduct in office

To be guilty of misconduct in office, one must first be a public officer. In this case, defendant is a deputy sheriff. In *Coutu I*, we held that a deputy sheriff is a public officer for purposes of misconduct in office when the allegations against him arise from the performance of his official duties. *Coutu I*, *supra* at 357-358.

Although defendant is a deputy sheriff, there is no evidence that his alleged conduct arose from the performance of his official duties. Rather, the charged conduct arose from a longstanding sexual relationship with the complainant. It is undisputed that defendant was on duty when he engaged in the conduct. However, the prosecutor presented no evidence correlating that conduct with defendant's public office. The act was neither initiated nor consummated in the exercise of defendant's duties. It is not alleged that the opportunity to commit the specific corrupt behavior in question, when it occurred, arose from or was furthered by defendant's status as a deputy sheriff. Whatever influence defendant's office may once have had on the complainant, there was no evidence that it influenced her to have sexual relations with defendant on the subject occasion.

In short, the prosecutor failed to offer evidence

11

establishing a nexus between defendant's alleged conduct and defendant's status as a sheriff's deputy. From that we conclude that defendant was not acting as a public officer for purposes of misconduct in office. *Coutu I, supra.* Accordingly, we affirm the Court of Appeals decision regarding this issue on the basis that there was insufficient evidence to support the charge of misconduct in office.

### CONCLUSION

We hold that the prosecutor presented insufficient evidence of coercion to sustain the charge of CSC-I against defendant. Because the prosecutor failed to meet this burden, we need not reach the question whether psychological subjugation is a viable theory of coercion.

We also hold that the evidence presented at the preliminary examination did not establish probable cause to believe that defendant committed the common-law offense of misconduct in office.

The Court of Appeals decision in this case is accordingly reversed in part and affirmed in part.

> Marilyn Kelly
> Maura D. Corrigan
> Michael F. Cavanagh
> Elizabeth A. Weaver
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman