# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CALEB NUQUAY MACKEY,

       Defendant-Appellant.

UNPUBLISHED
October 11, 2016

No. 328235
Kalamazoo Circuit Court
LC No. 2015-000023-FC

Before: SHAPIRO, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of armed robbery, MCL 750.529. Defendant was sentenced as a fourth-offense habitual offender to 20 to 50 years' imprisonment. Because the verdict was not against the great weight of the evidence, the prosecutor did not impermissibly vouch for its main witness, and defendant was not denied the effective assistance of counsel, we affirm.

According to the evidence introduced at trial, on January 5, 2015, defendant went to a jewelry store where an employee, Robert Mitchell, allowed him to try on a Rolex watch. Defendant "took off running" with the watch and Mitchell ran after him. Notably, Mitchell testified that, during the chase, defendant placed his hand in the breast area of his jacket and stated, "I've got a gun, I've got a gun." Mitchell testified that he feared being shot, but he continued to follow defendant. Mitchell saw defendant get into a white car and he memorized the license plate number. Based on information provided by Mitchell, the police soon located the vehicle and apprehended defendant. Police recovered the watch from defendant, but they did not find a gun. The jury convicted defendant of armed robbery.

On appeal, defendant first claims that the jury's verdict was against the great weight of the evidence. In particular, defendant contends that Mitchell's description of his fear during the chase is incredible because a person in fear of being shot would not continue in pursuit of an armed robber. According to defendant, it follows that no one could believe Mitchell was placed "in fear" and thus the verdict was against the great weight of the evidence. We disagree.

A verdict is against the great weight of the evidence when "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "New trial motions based solely on the weight of the evidence regarding witness credibility are not favored." *People v*

-1-

*Lemmon*, 456 Mich 625, 639; 576 NW2d 129 (1998). "[A]bsent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility for the constitutionally guaranteed jury determination thereof." *Id.* at 642 (citation omitted). To constitute "exceptional circumstances," "the witness testimony must 'contradict[ ] indisputable physical facts or laws,' be 'patently incredible or def[y] physical realities,' be 'so inherently implausible that it could not be believed by a reasonable juror,' or have been 'seriously impeached' in a case that was 'marked by uncertainties and discrepancies.'" *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015) (citation omitted).

> To convict a defendant of armed robbery, the prosecution must prove that:
>
> (1) the defendant, in the course of committing a larceny . . . used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon . . . or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007); see also MCL 750.529.]

In this case, the prosecution's theory of the case was that Mitchell was placed "in fear," and the jury was instructed that armed robbery required them to find that "defendant put in fear Robert Mitchell" during the course of committing a larceny. Actions taken "in the course of committing a larceny" include "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530.

As noted, in this case, Mitchell testified that he chased defendant from the store and, during defendant's flight with the watch, defendant placed his hand in his jacket and said "I've got a gun, I've got a gun." Mitchell testified that defendant's statement "scared" and "intimidated" him. He specified that he was "scared" "of being shot." In short, Mitchell's testimony, if believed, established that he was placed in fear by defendant during the course of the larceny as a result of defendant's representations about having a gun. Cf. *People v Williams*, 491 Mich 164, 183; 814 NW2d 270 (2012); *People v Jury*, 3 Mich App 427, 429-432; 142 NW2d 910 (1966). This evidence provided ample support for the jury's verdict.

In contrast, defendant maintains that no one could reasonably believe Mitchell was "in fear" because he continued to pursue defendant, even after defendant stated that he had a gun. In making this argument, defendant ignores evidence that Mitchell took reasonable protective measures in response to defendant's statement that in fact support the conclusion that Mitchell feared for his safety. For example, Mitchell testified that he slowed down to a walk, kept a "safer distance" between himself and defendant, and did not start running again until defendant was "far enough away that . . . [defendant] would have a hard time shooting [Mitchell] from that distance." In any event, even if Mitchell was arguably reckless in his pursuit of defendant, Mitchell's persistence does not necessarily demonstrate a lack of fear or contradict Mitchell's testimony that he was "scared." Humans are known to possess "courage" in varying degrees, *People v Coleman*, 350 Mich 268, 280-281; 86 NW2d 281 (1957), and it is the very definition of "courage" to persevere and withstand danger, fear, or difficulty, *Merriam-Webster's Collegiate Dictionary* (2014). In other words, we see nothing inherently implausible, patently incredible, or

violative of a physical reality in an individual undertaking action in the face of fear. Instead, it was for the jury to assess the significance of Mitchell's continued pursuit and to decide whether Mitchell was placed "in fear" during the course of the larceny. In sum, this case does not involve exceptional circumstances warranting a new trial on the basis of defendant's credibility challenges. See *Bosca*, 310 Mich App at 13.

Defendant next argues that the prosecutor improperly vouched for Mitchell's credibility during closing arguments. Defendant failed to object in the trial court, meaning that defendant's claims of prosecutorial misconduct are unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review unpreserved claims of prosecutorial misconduct for plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). "Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* at 329-330.

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. "[T]he prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

In this case, defendant presents this Court with several quotes selected from the prosecutor's closing argument in which the prosecutor stated that Mitchell had "no special reason to lie" and, more specifically, that Mitchell did not know defendant, Mitchell did not receive any type of bonus or gift if defendant was found guilty, and Mitchell had no "motivation to tell [the jury] something that's not true about the way he felt." Considering the statements in context, the prosecutor did not personally vouch for Mitchell or suggest any special knowledge concerning Mitchell's credibility, but instead accurately recounted Mitchell's testimony that he did not know defendant and would not receive a bonus from his involvement. From the evidence, the prosecutor reasonably argued that Mitchell had no reason to lie. This was not improper, particularly when Mitchell's credibility was an important and contested issue at trial. See *id.*; *Bennett*, 290 Mich App at 478-479. Moreover, any prejudice could have been relieved by a curative instruction, *Callon*, 256 Mich App at 329-330, and the jury was in fact instructed that the lawyers' arguments were not evidence. On this record, defendant has not shown plain error and he is not entitled to relief. See *id.*

Finally, defendant argues in a Standard 4 brief that defense counsel was ineffective for several reasons. Because defendant failed to preserve his claims, our review is limited to errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). To demonstrate ineffective assistance of counsel, "the defendant must show that counsel's performance fell below an objective standard of reasonableness" and "that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). "The defendant must overcome a strong

presumption that counsel's performance constituted sound trial strategy." *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Defendant also bears the burden of establishing the factual predicate of his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first claims that counsel did not properly investigate and had "no strategy whatsoever" at trial. However, defendant does not explain how the investigation was deficient or how more thorough investigation would have affected the outcome. Furthermore, there is no information on the record before this Court regarding defense counsel's investigation of this case, meaning that defendant has failed to establish the factual predicate of his claim. See *id.* Regarding counsel's strategy, contrary to defendant's representations on appeal, counsel presented a reasonable defense to the jury, arguing that, while defendant committed a larceny, he was not guilty of armed robbery because there "never was a gun" and Mitchell's claims of "fear" did not "make sense" given that he continued to pursue defendant. "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *Matuszak*, 263 Mich App at 61.

Defendant also raises some cursory challenges to counsel's diligence and commitment to the case, claiming that counsel did not visit him with enough frequency in jail, counsel was "preoccupied" with his cell phone during the jury selection, counsel made a joke to one of the deputies about defendant stealing watches, counsel had a "suspiciously cocky attitude about himself during trial," and counsel sent a paralegal to represent defendant at sentencing. By failing to provide any authority in support of his arguments, defendant has abandoned these claims. See *id.* at 59. In any event, defendant has failed to establish the factual predicate of his claims because there is no record evidence to support these assertions. See *Hoag*, 460 Mich at 6. Moreover, defendant makes no effort to establish how he was prejudiced by these supposed occurrences. Thus, he has not established his ineffective assistance claim. *Armstrong*, 490 Mich at 290.

Lastly, defendant argues that his trial counsel was ineffective for failing to advise him of the potential sentencing consequences of rejecting the plea offer. Defendant fails to provide a citation to legal authority and leaves it to this Court to discover and rationalize the basis for his claims. This type of cursory treatment constitutes abandonment of the issue. *Matuszak*, 263 Mich App at 59. Nevertheless, the argument fails because nothing on the record demonstrates that defense counsel failed to properly inform defendant of the information necessary to enable him to make an informed and voluntary choice between trial and a guilty plea. See generally *People v Fonville*, 291 Mich App 363, 384-385; 804 NW2d 878 (2011). In fact, before trial, defense counsel indicated on the record that he had discussed the final plea offer "at length" with defendant, but that defendant chose to reject it and go to trial. On the available record, defendant's claims of ineffective assistance are without merit.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto