*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 15, 2023

Plaintiff-Appellee,

v

No. 360980
Chippewa Circuit Court
LC No. 20-005129-FH

DAVID PAUL TADGERSON,

Defendant-Appellant.

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant, David Paul Tadgerson, appeals as of right his jury-trial convictions of two counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), and one count of operating a motor vehicle without insurance, MCL 500.3102(2). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to serve 2 to 4 years' imprisonment for assaulting, resisting, or obstructing a police officer and 365 days' imprisonment for operating a motor vehicle without insurance. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On July 19, 2020, City of Sault Ste. Marie Patrol Officer Jacob Driedric was performing a nightly patrol when he observed a 2003 GMC Sonoma drive the wrong way down a marked alley. Officer Driedric activated his patrol lights, stopped the vehicle, and asked the driver—defendant—for his license, registration, and proof of insurance. Defendant handed Officer Driedric his license and the title to his vehicle, which had been issued on June 25, 2020. Officer Driedric asked defendant about the dealer license plate that was affixed to the vehicle, and defendant responded that the plate was from the dealer from which he had purchased the vehicle. Officer Driedric again asked defendant to produce his insurance, and defendant stated that he did not have any insurance at that time "because of COVID." Officer Driedric obtained verification from the Secretary of State that the vehicle was not insured.

In accordance with departmental procedure, Officer Driedric asked defendant if he had a preference on a wrecker company to tow his vehicle. Defendant refused to provide one, and, instead, told Officer Driedric that no towing would occur. Officer Driedric asked for the car keys

-1-

because he was concerned that defendant was going to drive away. In response, defendant threw his keys on the dashboard. Officer Driedric called for backup, and Officer Scott Hazewinkel and Sergeant John Weist responded to the scene. Officer Driedric and Officer Hazewinkel repeatedly asked defendant to get out of his vehicle, but defendant refused and reiterated that his vehicle would not be towed.

After numerous commands for defendant to exit his vehicle and defendant steadfastly refusing, Driedric and Hazewinkel physically removed defendant from his vehicle. The officers then asked defendant to turn around and face his vehicle, but defendant refused, so the officers had to physically apply force to get defendant to turn toward his vehicle. When Driedric and Hazewinkel attempted to arrest defendant, defendant tensed up, which made it difficult for the officers to place handcuffs on him. Accordingly, the officers had to again use physical force to make defendant comply with their commands.

Defendant testified at trial that although the officers had commanded him to leave his vehicle, he did not think he had to comply. Defendant testified that he told Driedric that he "didn't personally have insurance"; defendant further testified that the vehicle had insurance "[t]hrough the dealer plate that was on there." Defendant believed that the officers did not have the right to tow his vehicle. Defendant denied pulling back when he was removed from his vehicle by the officers, and he explained that he got out of the vehicle because he was afraid he was going to be "tased." Defendant testified that he tensed up when the officers were putting the handcuffs on because the officers were twisting his arm.[1]

Defendant was convicted and sentenced as indicated above. This appeal of right then ensued.

## II. ANALYSIS

In his appeal, defendant first argues that the prosecution presented insufficient evidence to establish that he knowingly resisted the officers' lawful commands and that he operated his vehicle without insurance.

We review de novo a challenge to the sufficiency of evidence to support a conviction. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). " 'In examining the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.' " *Id.*, quoting *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks omitted). This Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

---

[1] Much of the interaction between Driedric and defendant was captured on Driedric's body camera and played for the jury.

Defendant argues that the prosecution presented insufficient evidence to demonstrate that he operated a vehicle without insurance. Defendant's arguments on this issue are as follows:

> Here the charged conduct was that Mr. Tadgerson refused to comply with commands by Officers Driedric and Hazewinkel when they ordered him out of his motor vehicle. The order was the result of a belief that the vehicle did not have proper insurance. The evidence was that Mr. Tadgerson had dealer plates on the vehicle and that with those plates the car was properly on the road. Officers never made an attempt to even verify what Mr. Tadgerson told them. Instead, they ordered him out of the car. Before ordering Mr. Tadgerson out of the car, the officers had an obligation to properly investigate the status of Mr. Tadgerson's claim that the car was legally on the road. This holds especially true where both officers acknowledged that there could be a two-week lag in insurance showing up on the Secretary of State website. Just as in *Moreno*, *supra*, where this Court held that a person is entitled to resist an unlawful arrest, Mr. Tadgerson was likewise entitled to not get out of his vehicle at the time the officers requested he do so. In the case at bar there was insufficient evidence that Mr. Tadgerson was driving without insurance and therefore insufficient evidence that he knowingly resisted a lawful command of either Officer Driedric or Officer Hazewinkel.

Defendant was convicted of violating MCL 500.3102(2), a provision of the no-fault act, MCL 500.3101 *et seq*. MCL 500.3102(2) provides:

> An owner or registrant[2] of a motor vehicle or motorcycle with respect to which security is required, who operates the motor vehicle or motorcycle or permits it to be operated upon a public highway in this state, without having in full force and effect security complying with this section or [MCL 500.3101 or MCL 500.3103] is guilty of a misdemeanor. A person who operates a motor vehicle or motorcycle upon a public highway in this state with the knowledge that the owner or registrant does not have security in full force and effect is guilty of a misdemeanor. A person convicted of a misdemeanor under this section shall be fined not less than $200.00 nor more than $500.00, imprisoned for not more than 1 year, or both.

MCL 500.3102(2) required that defendant have insurance on his truck in compliance with MCL 500.3101.[3] MCL 500.3101 provides that "[e]xcept as provided in [MCL 500.3107d and MCL 500.3109a], the owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance and property protection insurance as required under this chapter, and residual liability insurance." MCL

---

[2] Defendant does not argue that he was not an "owner or registrant" within the meaning of MCL 500.3101 and MCL 500.3102(2).

[3] MCL 500.3103 governs insurance requirements for motorcycles.

500.3107d and 500.3109a, in turn, allow an individual to opt out of personal protection insurance benefit coverage under certain circumstances if the individual has qualified health coverage.

Accordingly, by the plain terms of MCL 500.3102(2), defendant was required to maintain security for payment of insurance benefits as required under the no-fault act. By defendant's own admission during the traffic stop and in his testimony at trial, he did not procure such insurance. Moreover, the officers confirmed through Secretary of State documentation that defendant's vehicle was uninsured. Therefore, the evidence presented was sufficient to support a finding that defendant operated a motor vehicle without insurance, in violation of MCL 500.3102(2).[4]

Defendant also argues that because he was driving with a dealer plate, the officers had a duty to investigate whether the dealership had insured defendant's motor vehicle. However, in the absence of any case law or statutory basis for such a finding, we reject defendant's assertion that the officers were required to investigate whether the vehicle was insured through the dealer. Our rejection of this argument is based, in part on MCL 500.3102(3), which provides:

> The failure of a person to produce evidence that a motor vehicle or motorcycle has in full force and effect security complying with this section or [MCL 500.3101 or MCL 500.3103] on the date of the issuance of the citation, creates a rebuttable presumption in a prosecution under subsection (2) that the motor vehicle or motorcycle did not have in full force and effect security complying with this section or section 3101 or 3103 on the date of the issuance of the citation.

Accordingly, defendant's failure to provide proof of insurance to Officer Driedric, and his admission that he had not insured the vehicle under MCL 500.3102(3), created a "rebuttable presumption . . . that the motor vehicle . . . did not have in full force and effect security complying with this section or section 3101 or 3103 on the date of the issuance of the citation." Both at trial and on appeal, defendant has failed to overcome this presumption. Defendant admitted to Officer Driedric that the vehicle was not insured; he testified at trial that the vehicle was not insured; and the officers verified electronically that the vehicle was not insured. Defendant provides no support for his bald assertion that the officers were required to further investigate to ascertain whether the dealer plate had accompanying insurance because, as previously mentioned, it was clear that the dealer plate had been used far beyond a period of 72 hours. Hence, when viewed in a light most favorable to the prosecution, the evidence presented was sufficient for the jury to find that defendant operated a motor vehicle without insurance in violation of MCL 500.3102(2).

---

[4] We note that the prosecution suggests that MCL 257.244(9) allows the purchaser of a vehicle to operate the vehicle, with a dealer plate affixed, without insurance for up to 72 hours after purchasing the vehicle. We do not share the prosecution's analysis of MCL 257.244(9). We note that MCL 257.244 addresses registration requirements and does not address no-fault insurance. Regardless, defendant's title was issued approximately one month prior to the traffic stop, and defendant himself testified that he had purchased the vehicle seven or eight days prior to the traffic stop; accordingly, all of the evidence established that defendant had been in possession of the vehicle for much longer than 72 hours at the time of the stop. Hence, MCL 257.244 does not apply.

-4-

Defendant also argues that the prosecution presented insufficient evidence that he knowingly resisted a lawful command from either Officer Driedric or Officer Hazewinkel. Defendant's argument is again tethered to his assertion that the officers' commands were unlawful because he had insurance on his vehicle.

MCL 750.81d(1) provides:

> Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

"The elements of resisting or obstructing a police officer under MCL 750.81d(1) are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotation marks and citation omitted). However, MCL 750.81d does not "abrogate the common-law right to resist unlawful arrests or other unlawful invasions of private rights." *People v Moreno*, 491 Mich 38, 58; 814 NW2d 624 (2012). Therefore, " 'the prosecution must establish that the officers' actions were lawful' as an element of resisting or obstructing a police officer under MCL 750.81d." *Quinn*, 305 Mich App at 491, quoting *Moreno*, 491 Mich at 52.

On appeal, defendant argues that the prosecution presented insufficient evidence to establish that the officers' actions were lawful. To demonstrate the lawfulness of an officer's actions, the prosecution must prove that the officer "gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act." M Crim JI 13.1(4);[5] see *Moreno*, 491 Mich at 55-56. "For an arrest to be lawful, the police officer making the arrest must have probable cause, either that a felony or misdemeanor was committed by the individual in the officer's presence, or that a felony or specified misdemeanor (i.e., a misdemeanor punishable by imprisonment for more than 92 days) occurred outside the officer's presence and that the individual in question committed the offense." *People v Vandenberg*, 307 Mich App 57, 69; 859 NW2d 229 (2014). Because the legality of an officer's actions is an element of MCL 750.81d(1), it is a question of fact for the jury. *Quinn*, 305 Mich App at 494.

It is important to remember that at the time of the arrest, the officers must possess probable cause that a crime has been committed. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Vandenberg*, 307 Mich App at 69 (quotation marks and citation omitted). When Officer Driedric stopped defendant's vehicle, he asked defendant to produce his license, registration, and proof of insurance, and defendant responded that he did not

---

[5] We acknowledge that the standard criminal jury instructions are not binding authority. *People v Williams*, 288 Mich App 67, 76 n 6; 792 NW2d 384 (2010), aff'd 491 Mich 164 (2012).

have insurance. A check with the Secretary of State verified that the vehicle was not insured. MCL 500.3102(2) provides that "[a] person who operates a motor vehicle or motorcycle upon a public highway in this state with the knowledge that the owner or registrant does not have security in full force and effect is guilty of a misdemeanor" punishable by imprisonment for up to one year. Therefore, Officer Driedric had probable cause to arrest defendant because he directly witnessed defendant commit a misdemeanor offense. Additionally, Officer Hazewinkel had probable cause to arrest defendant for committing a misdemeanor punishable by imprisonment for at least 92 days outside Officer Hazewinkel's presence. See *Vandenberg*, 307 Mich App 69. Therefore, when viewed in a light most favorable to the prosecution, the evidence was sufficient to support the jury's finding that the officers' actions were lawful.

Defendant asserts, without citation to authority, that the prosecution was required to prove that he resisted a command from the officers that defendant *knew* was lawful. We glean nothing from MCL 750.81d(1) that requires officers to glean from defendant whether he knew their commands or actions were lawful. Rather, MCL 750.81d(1) requires only that defendant knew or had reason to know that the officers were "*performing [their] duties*" (emphasis added). Hence, MCL 750.81d(1) does not require the prosecution to establish that defendant knew that the officers' conduct was lawful. See *Moreno*, 491 Mich at 51-52; *People v Morris*, 314 Mich App 399; 886 NW2d 910 (2016). See also *Quinn*, 305 Mich App at 494 (stating that the lawfulness of an officer's actions is an element of MCL 750.81d and, therefore, is "a question of fact for the jury"). Accordingly, defendant is not entitled to relief on this issue.

We note that the judgment of sentence inaccurately states that defendant's sentences are consecutive and that they are to run consecutively with his sentences in another case. However, at sentencing, the trial court stated that the sentences were concurrent and were to run concurrently with the sentence in the other file number 20-5236-FH. Accordingly, we remand the matter to the trial court for the ministerial task of amending the judgment of sentence.

Affirmed, but remanded for the ministerial task of amending the judgment of sentence. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra